Filed 4/10/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| CROWN CAPITAL SECURITIES, L.P., | B256241 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC474442) |
| v. | |
| ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

Jones, Bell, Abbott, Fleming & Fitzgerald, Craig R. Bockman and William M. Turner for Plaintiff and Appellant.

Locke Lord, Michael F. Perlis, Richard R. Johnson, and F. Phillip Hosp for Defendant and Respondent.

# INTRODUCTION

Customers of a securities firm made claims against that firm based on real estate investments the firm's broker-dealers recommended. An entity that had an interest in and operated each of the real estate investments filed for bankruptcy, and at least some of the real estate investments became debtors in that bankruptcy proceeding. The appointed examiner in the bankruptcy proceeding found that the entity was engaged in a fraudulent "Ponzi scheme."[1] When the securities firm applied for professional liability insurance, it disclosed one of the customer claims but not the facts that would support other potential customer claims arising out of investments through the same entity as that involved in the disclosed claim. The insurer refused to defend the securities firm against undisclosed claims because the policy's application included an exclusion for nondisclosure of facts that might lead to a claim. In affirming the judgment, we hold that the trial court correctly entered judgment in favor of the insurer on the ground that there was no insurance coverage because all of the undisclosed claims arose out of the same events as the disclosed claim and therefore the facts underlying the undisclosed claims should have been disclosed.

# BACKGROUND

On November 10, 2008, DBSI, Inc. (sometimes DBSI) and various subsidiaries filed for bankruptcy. On October 19, 2009, a court appointed examiner (bankruptcy examiner) filed a "Final Report of the Examiner" with respect to the operation of DBSI.

On October 26, 2009, investor George Bou-Sliman transmitted a letter to plaintiff and appellant Crown Capital Securities, L.P., (Crown Capital), which letter attached a summary of the Final Report of the Examiner (Bou-Sliman Claim). In his letter, Bou-

---

[1] "A Ponzi scheme is a fraudulent investment scheme where '[m]oney from the new investors is used directly to repay or pay interest to old investors, [usually] without any operation or revenue-producing activity other than the continual raising of new funds. This scheme takes its name from Charles Ponzi, who in the late 1920s was convicted of fraudulent schemes he conducted in Boston.' [Citation.]" (*People v. Williams* (2004) 118 Cal.App.4th 735, 739, fn. 2.)

Sliman said, "My investment advisor and friend, Mr. Frank Naylor, discussed his relationship with Crown Capital in honest detail a few years ago. Mr. Naylor was convinced that Crown Capital would do a thorough investigation of any and all investment choices it recommended to it's [*sic*] representatives. Frank assured me that we could invest comfortably with this knowledge. [¶] Now, after having lost a sizeable portion of our investment, comes this document describing the principal of DBSI, the operator of a 'ponzi scheme'. [¶] We believe that your plan was Flawed. (Evidence contained in the enclosed 'Examiner's Final Report'). This report contains sad evidence contrary to your plan. [¶] We feel a conviction that your company owes us for this flawed investigation resulting in our loss of investment capital."

The email attached to the Bou-Sliman letter stated, "In short, the Examiner confirmed what we all suspected/feared as being true—that is, DBSI generally (and Douglas Swenson specifically) masterminded at least an eight year long ponzi scheme to defraud and misappropriate funds from investors." The summary reported, among other things, that DBSI was "burdened by huge high interest debt and master lease payment obligations, excessive insider distributions, and unrestrained losing investments"; DBSI "booked profits from inflated markups of real estate for sale to outside investors"; DBSI used "tenant-in-common . . . investor and bond and note money interchangeably and pooled such money to make required payments when they came due"; "Investor funds from all sources were commingled and treated as fungible funds"; DBSI's "guarantees of investments were illusory and were based on the cultivated false appearance that DBSI had substantial value"; and "the marketing claim that 'no investors had ever lost money' was also illusory and reflected that newly raised investor funds were being used to pay off existing investors."

On April 20, 2010, Darol Paulsen, on behalf of Crown Capital, executed an "Application for Professional Liability Insurance" from defendant and respondent Endurance American Specialty Insurance Company (Endurance) for a professional liability insurance policy for work performed by its security broker-dealers and investment advisors. Concerning Crown Capital's claims experience, Question 9 of the

3

application asked, "Have any claims, suits or proceedings (including without limitation: any shareholder action or derivative suit; or any civil, criminal, or regulatory action, or any complaint, investigation or proceeding related thereto) been made during the past five years against: (a) the Applicant: (b) its predecessors in business; (c) any subsidiary or affiliate of the Applicant; (d) any other entity proposed for coverage; or (e) any past or present principal, partner, managing member, director, officer, employee, leased employee or independent contractor of the Applicant, its predecessors in business, any subsidiary or affiliate of the Applicant or any other entity proposed for coverage?" Paulsen answered that question, "Yes."

Further concerning Crown Capital's claims experience, Question 10 of the application asked, "Is the Applicant (after diligent inquiry of each principal, partner, managing member, director or officer) aware of any fact, circumstance, incident, situation, or accident (including without limitation: any shareholder action or derivative suit; or any civil, criminal, or regulatory action, or any complaint, investigation or proceeding related thereto) that may result in a claim being made against: (a) the Applicant; (b) its predecessors in business; (c) any subsidiary or affiliate of the Applicant; (d) any other entity proposed for coverage; or (e) any past or present principal, partner, managing member, director, officer, employee, leased employee or independent contractor of the Applicant, its predecessors in business, any subsidiary or affiliate of the Applicant or any other entity proposed for coverage?" Paulsen answered that question, "No."

The application contained the following exclusion (Application Exclusion): "**NOTE: It is agreed that any claim or lawsuit against the Applicant, or any principal, partner, managing member, director, officer or employee of the Applicant, or any other proposed insured, arising from any fact, circumstance, act, error or omission disclosed or required to be disclosed in response to Questions 9, 10 and/or 11, is hereby expressly excluded from coverage under the proposed insurance policy.**" The application stated in part that "this Application shall be the basis

4

of the insurance and shall be considered physically attached to and become part of the Policy" if a policy is issued.

When Crown Capital applied for the Endurance professional liability insurance policy, it submitted a loss run report from its previous insurer, Arch Specialty Insurance Company. The loss run report disclosed the Bou-Sliman claim. On August 3, 2010, Endurance issued to Crown Capital Professional Liability Policy No. PPL10001995400 (Policy), but the term of the policy was from April 1, 2010, to April 1, 2011.

On April 21, 2010, Kurt Bochner, a customer of Crown Capital through which he invested in DBSI projects, initiated an arbitration entitled *Kurt Bochner, et al. v. Kenneth R. McDonald and Crown Capital Securities L.P.* (Bochner Claim) by filing a statement of claim with the Financial Industry Regulatory Authority (FINRA). Crown Capital reported the Bochner claim to Endurance on May 6, 2010. [2]

On September 7, 2010, Susan Biles, a customer of Crown Capital through which she invested in DBSI projects, initiated a FINRA arbitration entitled *Susan G. Biles; SGB-Village at Old Trace LLC; SGB-Landmark Towers LLC v. Summit Financial Advisors; Crown Capital Securities, L.P.; James S. Franceus* (Biles Claim). On September 21, 2010, Crown Capital reported the Biles Claim to Endurance.

On March 25, 2011, Linda Grana, a customer of Crown Capital through which she invested in DBSI projects, initiated a FINRA arbitration entitled *Linda Grana, individually and as sole member of Grana-Peachtree Corners Pavilion LLC v. Crown Capital Securities* (Grana Claim). On April 29, 2011, Crown Capital reported the Grana Claim to Endurance.

Endurance denied insurance coverage to Crown Capital under the Policy for the Bochner, Biles, and Grana claims, and refused to defend Crown Capital against those claims. Crown Capital brought an action against Endurance, and in its first amended complaint, Crown Capital alleged causes of action for reformation of contract, breach of

---

[2]     The parties have not contended that Crown Capital's report of the Bochner claim prior to the issuance of the Endurance policy but after the beginning of the policy period constituted a disclosure under the Application Exclusion.

5

contract, and bad faith. Within these causes of action, Crown Capital asserted claims for the denial of coverage by Endurance for FINRA arbitrations submitted by other Crown Capital customers concerning investments unrelated to DBSI. Crown Capital ultimately dismissed these claims, and they are not involved in this appeal.

Endurance filed an answer to the first amended complaint, which answer included "counter-claims," including three causes of action for declaratory relief—one each for the Bochner, Biles, and Grana Claims—seeking a declaration as to each tendered claim that the claim was excluded from coverage under the Policy.

Endurance moved for summary judgment or, alternatively, summary adjudication, on, as relevant here, its declaratory relief cross-claims. The trial court granted Endurance summary adjudication on its cross claims as to the Bochner, Biles, and Grana Claims, ruling that those claims were excluded from coverage under the Policy's Application Exclusion and that there was no potential for coverage. The trial court reasoned that the Final Report of the Examiner that was attached to the Bou-Sliman claim "disclosed an array of investments under the DBSI umbrella, the failure of which were tied to the DBSI activities. [¶] The evidence shows that the Bochner, Biles, and Grana claims all arise out of a 'fact, circumstance, act, error or omission' that was previously disclosed." Crown Capital filed a petition for writ of mandate in this court challenging the trial court's grant of summary adjudication. We denied the writ petition.

The trial court entered judgment "on all matters related to the Bochner, Biles, and Grana claims in favor [of] Endurance and against Crown [Capital] in this action and that Crown [Capital] take nothing by way of its causes of action related to these claims." Crown Capital filed a timely appeal.

## DISCUSSION

### I. The Application Exclusion

Crown Capital contends that the trial court erred in finding that there were no disputed material issues of fact concerning coverage for the Bochner, Biles, and Grana

6

Claims under the Policy and that those claims were excluded from coverage under the Application Exclusion.  The trial court did not err.

### A.    *Standard of Review and Rules of Interpretation*

"'When determining whether a particular [insurance] policy provides a potential for coverage . . . , we are guided by the principle that interpretation of an insurance policy is a question of law.  [Citation.]'  [Citation.]"  (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390.)  The standard of review is de novo with respect to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy.  (*Federal Ins. Co. v. Steadfast Ins. Co.* (2012) 209 Cal.App.4th 668, 679.)

As stated in *Federal Ins. Co. v. Steadfast Ins. Co., supra,* 209 Cal.App.4th at page 679, "'In reviewing de novo a superior court's summary adjudication order in a dispute over the interpretation of the provisions of a policy of insurance, the reviewing court applies settled rules governing the interpretation of insurance contracts . . . .  [¶]  "'While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply.'  [Citations.]  'The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties.'  [Citation.]  'Such intent is to be inferred, if possible, solely from the written provisions of the contract.'  [Citation.]  'If contractual language is clear and explicit, it governs.'  [Citation.]"  [Citation.]'  (*Powerine Oil Co., Inc. v. Superior Court, supra,* 37 Cal.4th at p. 390; accord, *TRB Investments, Inc. v. Fireman's Fund Ins. Co.* (2006) 40 Cal.4th 19, 27 [50 Cal.Rptr.3d 597, 145 P.3d 472].)"

### B.    *Duty to Defend*

In *American States Ins. Co. v. Travelers Property Casualty Co. of America* (2014) 223 Cal.App.4th 495, 506, we set forth the applicable principles concerning an insurer's duty to defend as follows:  "'[A] liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity.'  (*Horace Mann Ins. Co. v. Barbara*

7

*B.* (1993) 4 Cal.4th 1076, 1081 [17 Cal.Rptr.2d 210, 846 P.2d 792].) Whether an insurer owes its insured a duty to defend is made, in the first instance, by comparing the allegations in the complaint with the terms of the policy. (*Waller v. Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 26 [44 Cal.Rptr.2d 370, 900 P.2d 619].) If there is no potential for coverage under an insurance policy's terms, an insurer acts properly in denying a defense. (*Ibid.*) If there is any doubt about whether there is a duty to defend, the matter is resolved in the insured's favor. (*Horace Mann Ins. Co. v. Barbara B., supra,* 4 Cal.4th at p. 1081.)" "If an exclusion is not ambiguous, however, it will prevail over the insuring clause and preclude coverage." (*ML Direct, Inc. v. TIG Specialty Ins. Co.* (2000) 79 Cal.App.4th 137, 142.)

### C.     *Application of Relevant Principles*

Bou-Sliman's claim concerned his investment in a DBSI investment property known as Northpointe Towers, which investment Crown Capital broker-dealer Naylor recommended. Bochner's claim concerned his investment in DBSI investment properties known as DBSI Lamar LLC and DBSI Oakwood Plaza Acquisition, which investment Crown Capital broker-dealer Kenneth McDonald recommended. Biles's claim concerned her investment in DBSI investment properties known as Village at Old Trace and Landmark Towers, which investment Crown Capital broker-dealer James Franceus recommended. Grana's claim concerned her investment in DBSI investment properties known as DBSI Peachtree Corners Pavilion and DBSI E-470 East, which investment Franceus recommended. Crown Capital argues that the Bochner, Biles, and Grana Claims do not arise from the Bou-Sliman Claim because none of the Bochner, Biles, or Grana Claims involved the same investor or the same investment that was at issue in the Bou-Sliman Claim, and none of the investments at issue in the Bochner, Biles, or Grana Claims was recommended by the same Crown Capital broker-dealer who recommended the Northpointe Towers investment to Bou-Sliman. Crown Capital's argument is unavailing.

8

It is undisputed that Crown Capital was aware of the Bou-Sliman Claim when Crown Capital applied for the Policy, for that claim was reported in the application. In connection with its affirmative response to Question 9 of the application for the Policy, which question asked about claims made against Crown Capital within the previous five years, Crown Capital submitted to Endurance the Arch Specialty Insurance Company loss run report, which listed the Bou-Sliman Claim. The Bou-Sliman Claim notified Crown Capital of DBSI's bankruptcy. Like the Bou-Sliman Claim, the Bochner, Biles, and Grana Claims arose out of the DBSI Ponzi scheme—i.e., DBSI used new investor money to pay existing debt and payment obligations—and those claimants alleged that Crown Capital failed to exercise due diligence in assessing the viability of DBSI investments.

Crown Capital was aware that DBSI had declared bankruptcy and allegedly had been operating a Ponzi scheme, that Bou-Sliman had claimed that Crown Capital had failed to exercise due diligence in connection with a DBSI investment, and that its broker-dealers had sold other DBSI investments to their customers—i.e., investments that were part of a Ponzi scheme that was the subject of a bankruptcy proceeding. Thus, Crown Capital was aware of facts and circumstances that might result in a claim or claims being made against it, which awareness it was required to disclose under Question 10 of the application for the Policy. This requirement existed even though the Bochner, Biles, and Grana Claims did not involve the same investor or the same investment that was at issue in the Bou-Sliman Claim, and none of the investments at issue in the Bochner, Biles, or Grana Claims was recommended by the same Crown Capital dealer-broker who recommended the Northpointe Towers investment to Bou-Sliman. The Application Exclusion applied to claims that were the subject of required disclosure under Question 10.

Crown Capital also contends that the language in the Application Exclusion "arising from any fact, circumstance, act, error or omission disclosed or required to be disclosed in response to" questions concerning claims or proceedings or any claim that might be made in the Application Exclusion is "ambiguous as it relates to the circumstances of this case and both parties' reasonable expectations of the policy." It

9

contends that the "Distressed Investments" exclusion in the final version of the Policy excluded coverage for certain identified types of investment (investments related to Bernard L. Madoff, LandAmerica Financial Group, Inc., Stanford Financial Group and related entities) but not to DBSI investments, which had been listed in the exclusion in an earlier draft. Crown Capital argues that the trial court interpreted the "arising from" language broadly to allow Endurance to preclude from coverage future claims "merely because they might have some relation to DBSI, Inc." Crown Capital maintains that the trial court instead should have interpreted the "arising from" language narrowly to exclude from coverage only those claims that involved Bou-Sliman or his specific DBSI investment. Crown Capital argues that each claim involved a separate investment that did not "arise out of" the Bou-Sliman investment. The trial court did not err.

With respect to the scope of the "arising from" language, the trial court correctly stated, "'"[a]rising out of" is ordinarily understood to mean "originating from, having its origin in, growing out of, or flowing from, or in short, incident to, or having connection with.' Davis v. Farmers Ins. Group (2005) 134 Cal. App. 4th 100, 107. 'California courts have consistently given a broad interpretation to the terms 'arising out of' or 'arising from' in various kinds of insurance provisions. It is settled that this language does not import any particular standard of causation or theory of liability into an insurance policy. Rather, it broadly links a factual situation with the event creating liability, and connotes only a minimal causal connection or incidental relationship.' Acceptance Ins. Co. v. Syufy Enterprises (1999) 69 Cal. App. 4th 321, 328."

The trial court did not interpret the "arising from" language in the Application Exclusion in such a manner that it excluded coverage for the Bochner, Biles, and Grana Claims merely because they had some relation to DBSI. Instead, as discussed above, the trial court ruled that Endurance properly denied coverage for the disputed claims under the Application Exclusion because Crown Capital was aware that DBSI had declared bankruptcy and allegedly had been operating a Ponzi scheme; that Bou-Sliman claimed that Crown Capital had failed to exercise due diligence in connection with a DBSI investment; and that its broker-dealers had sold other DBSI investments to their

10

customers. Thus, Crown Capital was aware of facts and circumstances that might result in a claim or claims being made against it for any investment in a DBSI investment property. Accordingly, we do not believe there was any potential for coverage under the terms of the Policy or doubt as to Endurance's duty to defend. (*Waller v. Truck Ins. Exchange, supra,* 11 Cal.4th at p. 26; *Horace Mann Ins. Co. v. Barbara B., supra,* 4 Cal.4th at p. 1081.) Thus, the Bochner, Biles, and Grana Claims were excluded from coverage by virtue of the Application Exclusion, Endurance had no duty to defend Crown Capital with respect to those claims, and Endurance did not breach any obligation under the insurance policy in question.

## II. Other Potentially Covered Claims

Relying on *Waller v. Truck Ins. Exchange, supra,* 11 Cal.4th 1, Crown Capital contends that even if Bochner, Biles, and Grana all claimed that Crown Capital failed to exercise due diligence in connection with the DBSI investments, the trial court nevertheless erred in granting summary adjudication because Bochner, Biles, and Grana asserted causes of action alleging conduct other than the failure to exercise due diligence—the subject of the Bou-Sliman Claim.[3] (*Id.* at p. 19 [an insurer has a duty to defend if it becomes aware of "facts giving rise to the potential for coverage under the insuring agreement"].) The trial court did not err.

---

[3] Bochner asserted causes of action for breach of fiduciary duty, "misrepresentations and omissions," negligence, violation of California securities laws, violation of federal securities laws, and breach of contract. Biles asserted causes of action for breach of fiduciary duty, fraud and deceit, negligent misrepresentation, violation of section 10 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78j and SEC Rule 10b-5, aiding and abetting, violations of Oregon securities laws, violation of California Corporations Code sections 25504 and 25504.1, negligence, negligent failure to supervise, and sale of unregistered securities in violation of Oregon and California securities laws and federal securities registration requirements. Grana asserted causes of action for violations of federal securities laws, violations of California securities laws, violation of Business and Professions Code section 17200, violation of Oregon Securities Act (ORS, ch. 59), breach of contract, common law fraud, breach of fiduciary duty, and negligence and gross negligence.

Although advancing various theories, all of the causes of action that Bochner, Biles, and Grana asserted in their claims against Crown Capital and its broker-dealers concerned the purchase of DBSI investments.  At the time that Crown Capital applied for the Policy, it was aware of facts and circumstances that might result in a claim being made against Crown Capital—i.e., DBSI's bankruptcy, the alleged operation of a Ponzi scheme, and the investment by Crown Capital's customers in DBSI investments.  The awareness of those potential claims brought such claims within the Application Exclusion regardless of the theory upon which such claims might be based.  Accordingly, the trial court properly ruled that the entire Bochner, Biles, and Grana Claims, regardless of the theory of liability, were excluded from coverage under the Application Exclusion.

**DISPOSITION**

The judgment is affirmed.  Defendant Endurance American Specialty Insurance Company is awarded its costs on appeal.

**CERTIFIED FOR PUBLICATION**



MOSK, Acting P. J.


We concur:



KRIEGLER, J.



GOODMAN, J.*

---

\*      Judge of the Superior Court of Los Angeles County, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

12