*799 Concurrence by Judge MURPHY, III
Dissent by Judge TALLMAN
OPINION
N.R. SMITH, Circuit Judge:
When Congress passed the Telephone Consumer Protection Act (“TCPA”) it sought to protect individuals against invasions of privacy, in the form of unwanted calls (and 'now text messages) using automatic telephone dialing systems. Congress explicitly stated this purpose in the text of the TCPA. In light of this plainly stated purpose, and the lack of any other indicia of congressional intent in the statute, a TCPA claim is, by its nature, an invasion of privacy claim. Accordingly, a liability insurance policy that unequivocally and broadly excludes coverage for invasion of privacy claims also excludes coverage for TCPA claims.
BACKGROUND
On October 13, 2012, David M. Emanuel attended a basketball game at the Los Angeles Lakers’ home arena — the Staples Center. While at the game, Emanuel observed a message on the scoreboard, inviting attendees to send a text a message to a specific number. Emanuel sent a text message to the number, hoping the Lakers would display the message on the scoreboard. In response, Emanuel received the following text message:
Thnx! Txt as many times as u like. Not all msgs go on screen. Txt ALERTS for Lakers News alerts. Msg&Data Rates May Apply. Txt STOP to quit. Txt INFO for info
On November 20,- 2012, Emanuel, on behalf of himself and others similarly situated, brought a class action lawsuit against the Lakers. Emanuel.filed a First Amended Complaint in the case on February 8, 2013 (“Emanuel complaint”). Emanuel, alleged that the Lakers sent the response text message usjng an “automatic telephone dialing system,” in violation of the TCPA. He asserted, several times, that this message was an invasion of his privacy, and that the Lakers had invaded the privacy of other class members. Emanuel brought, two claims for relief — (1) negligent violation of the TCPA and (2) knowing and/or willful violation of the TCPA— and sought statutory damages and injunc-tive relief.
The. Lakers promptly asked their insurance provider, the Federal Insurance Company (“Federal”), to defend them against the lawsuit. The Lakers notified Federal of the lawsuit on November 27, 2012, shortly after the first complaint was filed. Federal insured the Lakers from January 1, 2012, to January 1, 2013, under a “ForeFront Portfolio” insurance policy (“the Policy”). The Policy contained .a “Directors & Officers Liability Coverage Section.” This section provided “Corporate Liability Coverage,”, which would require Federal to pay for losses (with some restrictions) suffered by the Lakers “resulting from any Insured Organization Claim ... for Wrongful Acts.” An “Insured Organization Claim” included “a civil proceeding commenced by service of a complaint or similar pleading ... against [the Lakers] for a Wrongful Act.” The Policy defined “Wrongful Acts” as “any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed *800 or attempted by” the Lakers. The Policy also contained a number of exclusions from Corporate Liability Coverage. Specifically, the Policy provided that “[n]o coverage will be available” for a claim,
based upon, arising from, or in consequence of libel, slander, oral or wi’itten publication of defamatory or disparaging material, invasion of privacy, wrongful entry, eviction, false arrest, false imprisonment, malicious prosecution, malicious use or abuse of process, assault, battery or loss of consortium!!.]
Finally, the “General Terms and Conditions Section” of the Policy provided that Federal had “the right and duty to defend any Claim covered by th[e] Policy.” This duty applied even if the allegations in the claim were “groundless, false or fraudulent.”
Federal denied coverage and declined to defend the Lakers, concluding that Emanuel had brought an invasion of privacy suit, which was specifically excluded from coverage. After asking Federal to reconsider its position, the Lakers filed this suit in Los Angeles Superior Court on September 2, 2014. The Lakers asserted two claims for relief. First, the Lakers brought a claim for breach of contract, asserting that Federal had violated the Policy by denying coverage for the Emanuel lawsuit. Second, the Lakers brought a claim for tortious breach of the implied covenant of good faith and fair dealing, based on Federal’s denial of coverage.
After removing the suit to federal court, Federal filed a motion to dismiss the suit for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), The district court granted the motion and dismissed the case without giving the Lakers leave to amend. L.A. Lakers, Inc. v. Fed. Ins. Co., No. CV 14-7743 DMG, 2015 WL 2088865, at *9 (C.D. Cal. Apr. 17, 2015). The district court found that the Lakers could not succeed in the suit under any cognizable legal theory, because TCPA claims are “implicit invasion-of-privacy claims” that fall squarely within the Policy’s “broad exclusionary clause.” Id. at *8. The Lakers timely appealed.
STANDARD OF REVIEW
We review de novo a district court’s order granting a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1041 (9th Cir. 2010). We will affirm a dismissal for failure to state a claim “where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory.” Id. (quoting Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001)). “In conducting this review, we accept the factual allegations of the complaint as true and construe them in the light most favorable to the plaintiff.” AE ex rel. Hernandez v. Cty. of Tulare, 666 F.3d 631, 636 (9th Cir. 2012). We also review de novo the district court’s interpretation of state contract law, AmerisourceBergen Corp. v. Dialysist W., Inc., 465 F.3d 946, 949 (9th Cir. 2006), and its interpretation of an insurance policy, Stanford Ranch, Inc. v. Md. Cas. Co., 89 F.3d 618, 624 (9th Cir. 1996).
ANALYSIS
This case requires us to interpret both the Policy and the TCPA. We start with the Policy and, accordingly, the California rules for interpreting insurance contracts.
I. The Policy
California courts interpret insurance contracts under the “ordinary rules of contractual interpretation.” Palmer v. Truck Ins. Exch., 21 Cal.4th 1109, 90 Cal.Rptr.2d 647, 988 P.2d 568, 652 (1999) *801 (citation omitted). In interpreting a contract, courts must ‘“give[] effect to the mutual intention of the parties as it existed’ at the time the contract was executed.” Wolf v. Walt Disney Pictures & Television, 162 Cal.App.4th 1107, 76 Cal.Rptr.3d 586, 601 (2008) (quoting Cal. Civ. Code § 1636). Where possible, the courts should determine the mutual intention of the parties “solely from the written provisions of the insurance policy.” Palmer, 988 P.2d at 652 (citation omitted). In addition, courts must give a contract’s terms their “ordinary and popular” meaning, “unless used by the parties in a technical sense or a special meaning is given to them by usage.” Id. (citation and internal quotation marks omitted). Courts are to interpret coverage clauses in insurance contracts “broadly so as to afford the greatest possible protection to the insured.” Aroa Mktg., Inc. v. Hartford Ins. of the Midwest, 198 Cal.App.4th 781, 130 Cal.Rptr.3d 466, 470 (2011) (citation omitted). In contrast, courts are to interpret “exclusionary clauses ... narrowly against the insurer.” Id. (citation omitted).
The Policy on its face clearly excludes from coverage claims “based upon, arising from, or in consequence of ... invasion of privacy.” The Policy does not explicitly exclude coverage of TCPA claims, so we must determine whether Emanuel’s TCPA claims fall within this exclusion. However, first we must acknowledge how broad this exclusionary clause is. California courts and our court have consistently given a broad interpretation to the clause “arising from” in an insurance contract. See Cont’l Cas. Co. v. City of Richmond, 763 F.2d 1076, 1080 (9th Cir. 1985) (quoting Underwriters at Lloyd’s of London v. Cordova Airlines, Inc., 283 F.2d 659, 664 (9th Cir. 1960)) (interpreting exclusionary clause in insurance contract under California law); Crown Capital Sec., L.P. v. Endurance Am. Specialty Ins., 235 Cal.App.4th 1122, 186 Cal.Rptr.3d 1, 7 (2015). “[A]rising out of’ encompasses “originating from, having its origin in, growing out of, ... flowing from, ... incident to, or having connection with.” Crown, 186 Cal.Rptr.3d at 7 (quoting Davis v. Farmers Ins. Grp., 134 Cal. App.4th 100, 35 Cal.Rptr.3d 738, 744 (2005)). Thus, this clause broadly excludes from coverage claims with “a minimal causal connection or incidental relationship” to invasion of privacy. Id. (quoting Acceptance Ins. v. Syufy Enters., 69 Cal. App.4th 321, 81 Cal.Rptr 2d 557, 561 (1999)); State Farm Fire & Cas. Co. v. Salas, 222 Cal.App.3d 268, 271 Cal.Rptr. 642, 645 n.4 (1990) (holding that “arising out of’ is also broadly construed in exclusionary clauses). California courts also give the clause “based on” the same broad reading as “arising out of.” Century Transit Sys., Inc. v. Am. Empire Surplus Lines Ins., 42 Cal.App.4th 121, 49 Cal.Rptr 2d 567, 571 n.4 (1996).
It is also necessary for us to examine the clause “invasion of privacy” in this exclusion. California courts have recognized “four distinct forms of tortious invasion [of privacy].” Johnson v. Harcourt, Brace, Jovanovich, Inc., 43 Cal. App.3d 880, 118 Cal.Rptr. 370, 375 (1974). Included in this list is “intrusion upon the plaintiffs seclusion or solitude.”[1] Id. (citation omitted). This form of invasion of privacy has been described as “the right to be let alone.” Miller v. Nat’l Broad. Co., 187 Cal.App.3d 1463, 232 Cal.Rptr. 668, *802 678 (1986) (quoting Gill v. Curtis Publ’g Co., 38 Cal.2d 273, 239 P.2d 630, 632 (1952)). This right to be let-alone is relative and is not absolute. Sanders v. Am. Broad. Cos., 20 Cal.4th 907, 85 Cal.Rptr.2d 909, 978 P.2d 67, 72 (1999). However, unwanted calls, received at inconvenient times, generally invade an individual’s privacy and right to be let alone. See Restatement (Second) of Torts § 652B (1977) (cited in Shulman v. Grp. W Prods. Inc., 18 Cal.4th 200, 74 Cal.Rptr.2d 843, 955 P.2d 469, 481-90 (1998)).
II. The TCPA
With an understanding of the scope of the exclusionary clause, we turn next to the TCPA. Federal argues a TCPA claim is inherently an invasion of privacy claim. The district court agreed, concluding that the protection of privacy interests was “the conceptual wellspring of the TCPA’s protections.” 2015 WL 2088865, at *5. The Lakers assert in response that invasion of privacy is just one of the harms which the TCPA sought to protect the public against. Thus, we must determine whether the purpose of the TCPA was to prevent invasions of privacy, or, in addition, some other harm.
In making this determination we start, as we must, with the text of the statute.[2] McDonald v. Sun Oil Co., 548 F.3d 774, 780 (9th Cir. 2008), abrogated on other grounds by CTS Corp. v. Waldburger, — U.S. —, 134 S.Ct. 2175, 189 L.Ed.2d 62 (2014); see also Lamie v. U.S. Tr., 540 U.S. 526, 534, 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (“The starting point in discerning congressional intent is the existing statutory text."). Our inquiry will “end[] there as weE if the text [of the statute] is unambiguous.” BedRoc Ltd. v. United States, 541 U.S. 176, 183, 124 S.Ct. 1587, 158 L.Ed.2d 338 (2004). “The preeminent canon of statutory interpretation requires us to ‘presume that [the] legislature says.in a statute what it means and means in a statute what it says there.’ ” Id. (alteration in original) (quoting Conn. Nat’l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). If “the statute’s language is plain, the sole function of the courts ... is to enforce it according to its terms.” Lamie, 540 U.S. at 534, 124 S.Ct. 1023 (quoting Hartford Underwriters Ins. v. Union Planters Bank, 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)).
 We must also “assum[e] that the legislative purpose is expressed by the ordinary meaning of the words used” by the legislature. Richards v. United States, 369 U.S. 1, 9, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962). Like plain meaning, “[t]he ‘plain purpose’ of legislation ,., is determined in the first instance with reference to the plain language of the statute itself.” Bd. of Governors of Fed. Reserve Sys. v. Dimension Fin. Corp., 474 U.S. 361, 373, 106 S.Ct, 681, 88 L.Ed.2d 691 (1986) (citing Richards, 369 U.S. at 9, 82 S.Ct. 585); Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 56 (2012) (“[T]he purpose [of a statute] must be derived from the text, not from extrinsic sources such as legislative history or an assumption about the legal drafter’s desires.”). In debating and considering a statute,- Congress often gives numerous reasons why the statute would be advantageous.- But not all of these stat *803 ed objectives potentially served by the statute constitute the statute’s “purpose.” To find a statute’s purpose we must look to see if Congress has clearly stated it in the text of the statute itself. Thus, the language of the statute is “the best guide to the purposes of a statute,” because “statutes are records of legislative compromise.” Am. Ass’n of Retired Pers. v. EEOC, 823 F.2d 600, 604 (D.C. Cir. 1987) (citing Bd. of Governors, 474 U.S. at 374, 106 S.Ct. 681).
The TCPA makes it unlawful for" a person,
to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice ...
to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call....
47 U.S.C. § 227(b)(1)(A)(iii). In addition, one of the individuals to the call (either the caller or the recipient) must be “-within the United States.” Id. § 227(b)(1). Unlike some statutes, the TCPA does not dedicate a section of its text to describing its purpose. However, that does not mean the TCPA does not state its purpose. In fact, Congress explicitly stated the purpose of the TCPA in two sections: § 227(b)(2)(B) and § 227(b)(2)(C). Subsection 227(b)(2) requires the Federal Communications Commission to “prescribe regulations to implement th[e] subsection” of the TCPA that outlines the “[restrictions on use of automated telephone equipment.” In addition, § 227(b)(2)(B) provides'that the Federal Communications Commission,
may, by rule or order, exempt from the requirements of paragraph (1)(B) of this subsection, subject to such conditions as the Commission may prescribe—
[[Image here]]
(ii) such classes or categories of calls made for commercial purposes as the Commission determines—
(I) mil not 'adversely affect the privacy rights that this section is intended to protect’, and
(II) do no include the transmission of any unsolicited advertisement.
(emphasis added). Further, § 227(b)(2)(C) provides that, “[i]n implementing the requirements of this subsection, the Commission — ”
may, by rule or order, exempt from the requirements of paragraph (l)(A)(iii). of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party, subject to such conditions as the Commission may prescribe as necessary in the interest of the privacy rights this section is intended to protect.
(emphasis added). Thus,- the TCPA’ twice explicitly states that it is intended to protect privacy rights. Equally as significant, the TCPA contains no other statement regarding its intended purpose. Thus, we must presume from this unequivocal statement, arid the lack 'of ariy other statements expressing an alternative intent,' that the purpose of the TCPA is to protect privacy rights and privacy rights alone.[3] See Sil *804 vers v. Sony Pictures Entm’t, Inc., 402 F.3d 881, 885 (9th Cir. 2005) (explaining the doctrine of expressio unius est exclusio aIterius).
We have before outlined the three elements of a TCPA claim: “(1) the defendant called a cellular telephone number; (2) using an automatic telephone dialing system; (3) without the recipient’s prior express consent.” Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012). Absent from this list is proof that the call invaded the recipient’s privacy. This omission is no mistake. As demonstrated by the explicitly stated purpose of the TCPA, Congress concluded that the calls it prohibited in passing the TCPA were an implicit invasion of privacy. In practice, there may be other interests that the TCPA protects. But these alternative interests do not transform Congress’s express intent to craft the TCPA to serve privacy interests. Accordingly, in pleading the elements of a TCPA claim, a plaintiff pleads an invasion of privacy claim.[4]
Moreover, once a TCPA plaintiff has established these three elements, and has thus proven an invasion of privacy, the plaintiff may obtain either actual or statutory damages. 47 U.S.C. § 227(b)(3)(B). Such damages are available only because the plaintiff has suffered a cognizable, personal injury.[5] As the district court explained, the “fact that [a plaintiff] seeks only economic damages does not strip [TCPA claims] of their privacy-based character.” 2015 WL 2088865, at *7. Instead, “[t]he economic injury stems from” and is a result of a defendant’s invasion of a plaintiffs privacy. Id. The availability of statutory damages only eases the burden on plaintiffs of establishing the actual value of the harm they suffered when a defendant invaded their privacy. Of course, if the invasion of privacy resulted in a loss greater than the fixed statutory award, actual damages are available.
III. The Emanuel Complaint
Emanuel asserted two claims for relief: negligent violation of the TCPA and knowing/willful violation of the TCPA. Because, as explained above, a plaintiff asserts an invasion of privacy claim when he or she asserts a TCPA claim, Emanuel *805 asserted two invasion of privacy claims and nothing else in his complaint.[6]
When Federal received a request from the Lakers to defend them against the Emanuel complaint, Federal correctly identified the two TCPA claims as claims for invasion of privacy. It is evident from the plain language of the insurance contract that the parties intended to exclude all invasion of privacy claims. We recognize that exclusionary clauses are to be construed against the insurer; but here we must reconcile this rule with our canon of giving effect to the intent of the parties in light of a clause that broadly excludes coverage for any claim originating from, incident to, or having any connection with, invasion of privacy. A TCPA claim falls within the category of intrusion on the “right to be let alone” recognized under California law as an invasion of privacy. Emanuel’s claim is unquestionably, at the very least, connected to an alleged invasion of privacy. Therefore, Federal properly concluded that the claims asserted in the Emanuel complaint were excluded from coverage under the Policy. The dissent’s narrow construction of the exclusionary clause conflicts with the clear intent of the contracting parties.
IV. The Duty to Defend
Finally, the Lakers assert that, even if the Policy did not require Federal to indemnify cost incurred from the Emanuel action, Federal still had a duty to defend the suit from the beginning. In California, an insurer’s duty to defend is broad. “An insurer must defend its insured against claims that create a potential for indemnity under, the policy.” Scottsdale Ins. v. MV Transp., 36 Cal.4th 643, 31 Cal.Rptr.3d 147, 115 P.3d 460, 466 (2005). An insurer first must compare the allegation in the complaint with the terms of the policy to determine whether it must defend an action. Id. However, the duty does not stop there. The insurer might also have a duty to defend an action “where extrinsic facts known to the insurer suggest that the claim may be covered.” Id. In addition, the insurer has a “duty to defend where, under the facts alleged, reasonably inferable, or otherwise known, the complaint could fairly be amended to state a covered liability.” Id,
While this duty is broad, it is not limitless, and California courts have warned against “miseonstru[ing] the principle of ‘potential liability’ under an insurance policy.” Gunderson v. Fire Ins. Exch., 37 Cal.App.4th 1106, 44 Cal.Rptr.2d 272, 277 (1995), More specifically, “[a]n insured may not trigger the duty to defend by speculating about extraneous ‘facts’ regarding potential liability or ways in which the third party claimant might amend its complaint at some future date.” Id. Thus, an insured may not “manufacture coverage” by guessing what other unknown *806 facts or unsupported claims a claimant could possibly assert; Id. at 277-78,
The Lakers assert that the Policy potentially entitled- them to indemnity, because Emanuel asserted that he suffered multiple harms, not just an invasion of privacy. In addition, the Lakers argue that) because Emanuel only sought “recovery of economic injury” and explicitly swore off “any recovery for personal injury” in his complaint, he did not actually seek relief for invasion of. his privacy, which is generally a form of “personal injury.”
These statements from Emanuel’s complaint regarding economic injury and personal injury cannot overcome the reality that Emanuel asserted, two claims for relief, both under the TCPA. As explained above, a TCPA claim is an invasion of privacy claim, regardless of the type of relief sought. Moreover, we will not allow Emanuel to. redefine the TCPA by disclaiming any recovery for personal injury. Therefore, Federal would only have had a duty to defend if the facts alleged or known could support a claim other than a TCPA claim. The facts Emanuel asserted are straightforward. He received an unwanted text message from the Lakers and he thought it was sent using an automatic telephone dialing system. The'Lakers have not identified what other claim this set of facts could support. The Lakers have also failed to identify any other relevant facts that were known at the time the Emanuel complaint was filed.
Finally, in the motion t.o dismiss .the Emanuel complaint, the Lakers argued that'the text message at issue was not the type of “privacy violation or ... abusive telemarketing practice that Congress aimed to-curb by enacting the TCPA,” and that the “[p]olicy at the heart of the TCPA therefore ... warrants dismissal of [Emanuel’s] TCPA claims with prejudice.” Defendant’s Memorandum in Support of Its Motion to Dismiss Plaintiffs First Amended Complaint or in the Alternative, Motion for Summary Judgment at 10, 13, Emanuel v. L.A. Lakers, Inc., No. 2:12-cv-9936-GW-SH (C.D. Cal. Feb. 25, 2013), ECF No. 17-1. Thus, even the Lakers acknowledged that -“[b]y enacting the TCPA, Congress intended to ‘protect the privacy interests of ... telephone subscribers by placing restrictions on unsolicited, automated telephone callsId. at 3 (emphasis added in brief) (quoting Satterfield, 569 F.3d at 954). The Lakers also acknowledged that “[c]ourts have consistently held the TCPA protects a species of privacy interest in the sense of seclusion.” Defendant’s Reply in Support of Its Motion to Dismiss Plaintiffs First Amended Complaint or in the Alternative, motion for Summary Judgment, No. 2:12-cv-9936-GW-SH (C.D. Cal. Apr. 4, 2013) ECF No. 19 (quoting Park Univ. Enters., Inc. v. Am. Cas. Co. of Reading, PA, 442 F.3d 1239, 1249 (10th Cir. 2006)). Our decision should not now allow the Lakers to “manufacture coverage” by changing their argument to suggest that the -Emanuel complaint could have been amended to divorce itself completely from the “policy at the heart of the TCPA”: protecting individuals from abusive privacy invasions,
For all of these reasons, we must conclude that there was no potential that Emanuel could amend his complaint to assert a claim for relief that would be supported by any of the facts alleged or otherwise known. Federal, therefore, did not have a duty to defend the Lakers against the Emanuel complaint.
CONCLUSION
Because a TCPA claim is inherently -an invasion of privacy claim, Federal correctly concluded that Emanuel’s TCPA claims fell under the Policy’s broad exclusionary clause. Accordingly, Federal did not *807 breach the Policy, or the implied covenant of good faith and fair dealing, under any cognizable legal theory, when it declined to defend against or cover the Emanuel complaint. As there was no cognizable legal theory under which the Lakers could establish that Federal breached the Policy, and there were no known facts to support any other claim for relief, the district court properly dismissed the Lakers’ complaint.
AFFIRMED.

. The remaining three forms of invasion of privacy are: "(2) publicity which places the plaintiff in false light in the public eye; (3) public disclosure of true, embarrassing private facts about the plaintiff; (4) appropriation of plaintiff’s name or likeness for commercial purposes.” Johnson, 118 Cal.Rptr. at 375 (citations omitted).

. We know of no canon of construction that instructs us first to determine if the statutory elements of a cause of action are ambiguous. Rather, we approach statutory construction as a “holistic endeavor,” considering the whole text of a statute, including any portion expressing the statute’s purpose. See United Sav. Ass’n of Tex. v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 371, 108 S.Ct. 626, 98 L,Ed.2d 740 (1988).

. We have previously cited legislative history when considering the purpose of the TCPA. See Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 954 (9th Cir. 2009). In Satterfield we also determined that the purpose of the TCPA was to protect privacy interests. Id. However, while this purpose is clear from the statute, some history was required in that case to asáist us in determining the ambiguous question of whether "call," a term not defined in the TCPA, included text messages. Id. at 953-54. Thus, the issues in Satterfield are distinguishable from the question we face now.

. One issue raised at oral argument was whether a holding that a TCPA claim is inherently an invasion of privacy claim would prevent corporations, which do not have the same privacy interests as individuals in many states, from obtaining relief under the TCPA, The parties did not brief this issue, so we do not address it.
However, if we were to address this issue, it would not affect our decision here. Although the statute clearly indicates that Congress intended the TCPA to protect privacy interests, the statute does not clearly indicate that the TCPA was intended to protect corporations, and we have yet to answer that question. The statute's provision of a private right of action supplies the closest indication of an answer. The statute provides that ‘‘[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State ... an action based on a violation of this subsection or the regulations prescribed under this subsection." 47 U.S.C. § 227(b)(3)(A). The statute does not define "entity,” But the statute does indicate that the states are to determine which "entities” can bring TCPA claims. Thus, the states determine whether a corporation can seek or obtain relief under the TCPA.

. Citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992), the dissent asserts that the three statutory elements, which do not recite a harm, alone demonstrate a legally cognizable injury. Not only is Emanuel's standing to sue not before us, but "[i]t is settled that Congress cannot erase Article Ill’s standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.” Raines v. Byrd, 521 U.S. 811, 820 n.3, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997).

. Emanuel also plainly stated multiple times that the Lakers’ alleged violation of the TCPA invaded his privacy. See, e.g., First Amended Complaint for Damages and Injunctive Relief Pursuant to the Telephone Consumer Protection Act, 47 U.S.C. § 227, et seq., Emanuel v. L.A. Lakers, Inc., No. 2:12-cv-9936 GW (SHx) (C.D. Cal. Feb, 8, 2013), ECF No. 15, at ¶ 1 (“[T]he illegal actions of THE LOS ANGELES LAKERS, INC...., in negligently contacting [Emanuel] on [his] cellular telephone, in violation of the Telephone Consumer Protection Act, ... thereby invad[ed Emanuel’s] privacy.”); id., at ¶ 2 (‘‘The TCPA was designed to prevent calls and messages like the ones described within this complaint, and to protect the privacy of citizens like [Emanuel].’’); id., at ¶ 31 (‘‘[The Lakers], either directly or through its agents, illegally contacted [Emanuel] and the Class members via their cellular telephones by using marketing and text messages, thereby ... invading the privacy of [Emanuel] and the Class members.”).