**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

**FILED**

JUN 1 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| TP RACING LLLP,<br><br>        Plaintiff-Appellant,<br><br>v.<br><br>AMERICAN HOME ASSURANCE<br>COMPANY,<br><br>        Defendant-Appellee. | No. 21-16910<br><br>D.C. No. 2:21-cv-00118-SRB<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted November 18, 2022
Phoenix, Arizona

Before: BYBEE, OWENS, and COLLINS, Circuit Judges.

TP Racing LLLP ("TP Racing")—the owner and operator of a horse racing track in Phoenix, Arizona—filed this diversity action seeking coverage from its insurer, American Home Assurance Co. ("AHAC"), for losses sustained during the Covid pandemic. Construing the policy terms in accordance with the applicable Arizona law, the district court held that TP Racing's asserted losses were not covered by the policy, and the court granted AHAC's motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). We affirm.

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

# I

## A

TP Racing owns and operates Turf Paradise, a horse racing track and grandstand in Phoenix, Arizona, as well as a series of "off track betting" facilities, or "OTBs," located in bars and restaurants across the State. TP Racing purchased a commercial property insurance policy issued by AHAC. The policy provides that AHAC "will pay for all risks of *direct physical loss or damage* by a covered cause of loss to covered property at a covered location" (emphasis added). A "covered cause of loss" means any "peril or other type of loss . . . not otherwise excluded." TP Racing relies on four specific coverage provisions in the policy.

First, the policy provides "Time Element Coverage[]." The general business interruption provision of that coverage specifies that AHAC will pay, *inter alia*, "the actual business income loss sustained by [TP Racing] due to the necessary partial or total interruption of [TP Racing's] business operations, services or production during the period of indemnity as a result of direct physical loss or damage to . . . covered property by a covered cause of loss."

Second, the policy provides "Extra Expense" coverage, a specific variation of time element coverage, which states that AHAC will pay "loss sustained by [TP Racing] for extra expense during the period of indemnity resulting from direct physical loss or damage by a covered cause of loss." The policy defines "extra

expense" to mean, among other things, expenses "incurred to temporarily continue as nearly normal as practicable the conduct of [TP Racing's] business" during the "period of indemnity."

Third, the policy also provides coverage for an "Interruption by Civil or Military Authority." This provision states that AHAC will pay TP Racing for "business income loss" it suffers if (a) *someone else's* property "sustains direct physical loss or damage"; (b) an order by some "civil or military authority" limits access to that property; and (c) the effect of this government closure of third-party property is to limit access to *TP Racing's* property.

Fourth, TP Racing's policy provides "Preservation of Property" coverage. This provision covers "[r]easonable and necessary costs" incurred by TP Racing in taking action to "temporarily protect or preserve covered property," but only if TP Racing's action was "necessary due to imminent direct physical loss or damage to" that property.

Finally, the policy sets out a coverage *exclusion*, which we will call the "Contaminant Exclusion." That exclusion states that AHAC will not pay for "loss or damage caused directly or indirectly by . . . [t]he actual, alleged or threatened release, discharge, escape or dispersal of *pollutants or contaminants*, all whether direct or indirect, proximate or remote or in whole or in part caused by, contributed to or aggravated by any covered cause of loss under this Policy" (emphasis added).

3

The exclusion defines "pollutants or contaminants" to include "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste, which after its release can cause or threaten damage to human health or human welfare . . . including, but not limited to, bacteria, *virus*, or hazardous substances" (emphasis added).[1]

**B**

In response to the spread of Covid, Arizona Governor Doug Ducey issued in March 2020 an order instructing all bars to "close access to the public until further notice" and all restaurants to "close access to onsite dining until further notice." Because all of TP Racing's off-site betting facilities were located within either bars or restaurants, this order effectively closed down all of TP Racing's OTBs. Government orders kept all of TP Racing's OTBs shuttered "through at least the end of May 2020," and some of its OTBs closed a second time "from late June until August 2020." Pandemic closure orders also extended to TP Racing's Turf Paradise racetrack. According to TP Racing, it was forced to close the racetrack in

---

[1] The exclusion does not apply, however, if there is "direct physical loss or damage . . . from pollutants or contaminants" that is itself "caused by a covered cause of loss." For example, if a natural disaster that constituted a covered cause of loss physically damaged a covered location, thereby releasing pollutants from a holding tank located on the property, this exception-from-the-exclusion would presumably provide coverage for the resulting property damage from the escaped pollutant. Neither side contends in this court that the exception from the exclusion is relevant in this case.

4

the middle of an event on March 14, 2020, and the premises remained mostly closed until January 4, 2021.

In response to the pandemic and the government closure orders, TP Racing sought coverage under its commercial property policy from AHAC. After AHAC refused to pay, TP Racing filed this diversity suit seeking coverage. *See* 28 U.S.C. § 1332. The district court granted AHAC's motion to dismiss, holding that, as a matter of law, "the Policy does not cover TP Racing's losses."

TP Racing timely appealed. Reviewing the district court's decision de novo, *see L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 800 (9th Cir. 2017), we affirm.

## II

As our earlier summary makes clear, each of the four coverage provisions that TP Racing invokes requires a showing, *inter alia*, that "direct physical loss or damage" has occurred or is threatened to insured property or (in the case of the Civil or Military Authority provision) has occurred to nearby property. In contending that it has carried its burden to plead facts establishing this element of coverage under the relevant insuring clauses, *see Keggi v. Northbrook Prop. & Cas. Ins. Co.*, 13 P.3d 785, 788 (Ariz. Ct. App. 2000), TP Racing relies on the theory that Covid virus particles that are physically present on the surfaces and in the air at TP Racing's premises—or, in the case of the "Civil or Military Authority" coverage, at a third party's nearby premises—inflict "direct physical

5

loss or damage" upon those premises. The district court held that this theory was untenable under Arizona law and that coverage therefore was not available under any of the four provisions. TP Racing challenges that holding on appeal, but we conclude that it is unnecessary to resolve that issue. Even assuming *arguendo* that the presence of Covid particles on qualifying premises constitutes "direct physical loss or damage," we conclude that the Contaminant Exclusion bars coverage on such a theory. *See United States v. Corinthian Colls.*, 655 F.3d 984, 992 (9th Cir. 2011) ("We can affirm a 12(b)(6) dismissal 'on any ground supported by the record, even if the district court did not rely on the ground.'" (citation omitted)).

As we have explained, the Contaminant Exclusion states that, *inter alia*, AHAC will *not* pay for any "loss or damage" caused, either "directly or indirectly," by the "dispersal" of a "virus." Given the breadth of that exclusion, the very thing that TP Racing claims gives rise to coverage—namely, that the physical presence of virus particles resulted in "direct physical loss or damage"— necessarily triggers the Contaminant Exclusion. *Cf. AECOM v. Zurich Am. Ins. Co.*, 2023 WL 1281675, at *1 (9th Cir. Jan. 31, 2023) (reaching a similar conclusion under California law).

In arguing that the exclusion does not apply, TP Racing asserts that the word "dispersal" is ambiguous and should be narrowly construed as applying only to contaminants that originate on its premises and not to those that "invade the

6

premises" (here, through the presence of infected persons).  We reject this contention.  "Provisions of insurance policies are to be construed in a manner according to their plain and ordinary meaning."  *Sparks v. Republic Nat'l Life Ins. Co.*, 647 P.2d 1127, 1132 (Ariz. 1982).  As relevant here, "disperse" is to "strew or distribute widely" or "[t]o distribute (particles) evenly throughout a medium."  *Disperse*, THE AMERICAN HERITAGE DICTIONARY OF THE ENGLISH LANGUAGE (5th ed. 2018).  That is precisely the predicate of TP Racing's theory of "direct physical loss or damage."  Under TP Racing's theory, (1) "respiratory droplets" containing Covid particles are "*expelled* from infected individuals" and "land on, attach, and adhere to surfaces and objects"; and (2) infected persons "*expel* aerosolized droplet nuclei" that contain Covid particles "that remain in the air . . . like dangerous fumes" (emphasis added).  The spreading of Covid particles, including by expulsion from infected persons, fits squarely within the ordinary plain meaning of "dispersal" of a "virus."  And nothing in the language of the exclusion supports the view that only dispersal from a source that originates wholly *within* the subject premises counts.  The exclusion applies if the claimed "loss or damage" is caused, directly or indirectly, by any "dispersal" of a "virus."  The relevant language of the exclusion says nothing about where the virus has been dispersed or from whence.

Moreover, the plain language of the exclusion makes clear that coverage is barred if the claimed "loss or damage" has *any* causal connection to the dispersal

7

of a virus, "whether direct or indirect, *proximate or remote* or in whole or in part caused by, contributed to or aggravated by any covered cause of loss under this Policy" (emphasis added). The breadth of that provision further confirms the applicability of the exclusion here. All of the losses that TP Racing claims, including prevention and remediation costs, are causally connected to the alleged actual or threatened dispersal of virus particles on its premises or at nearby premises. *Cf. Mudpie, Inc. v. Travelers Cas. Ins. Co. of Am.*, 15 F.4th 885, 893–94 (9th Cir. 2021) (holding that a virus exclusion that did *not* explicitly exclude losses that were remotely caused by a virus nonetheless barred coverage of all Covid-related business closure losses).

 **AFFIRMED**.