[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-12525

_____

D.C. Docket No. 9:18-cv-80762-RLR

JACOB HORN,
individually and on behalf of all others similarly situated as assignees of
Ican Benefit Group LLC, a Florida Limited Liability company,
ROBERT VETTER,
individually and on behalf of all others similarly situated as assignees of
Ican Benefit Group LLC, a Florida Limited Liability company,

Plaintiffs-Appellants,

versus

LIBERTY INSURANCE UNDERWRITERS, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(June 1, 2021)

Before MARTIN, NEWSOM, and BRANCH, Circuit Judges.

BRANCH, Circuit Judge:

This appeal requires us to interpret an insurance agreement between iCan Benefit Group, LLC, a Florida company, and its insurance provider, Liberty Insurance Underwriters, Inc. We must determine, under Florida law, whether a policy exclusion barring coverage for "[c]laims . . . arising out of . . . an invasion of privacy" excludes coverage for claims alleging violations of the Telephone Consumer Protection Act of 1991 ("TCPA") in which the complaint repeatedly alleges that the defendants invaded the privacy of the plaintiffs.[1] We hold that the invasion of privacy exclusion unambiguously does so.

The insured, iCan, is not before our Court. Rather, the appellants are a class of consumers that sued iCan asserting two causes of action for TCPA violations. After the consumers filed suit, iCan sought coverage for the claims under its insurance policy, but Liberty denied iCan's request. iCan then settled the lawsuit. In exchange for the class plaintiffs' promise not to enforce the judgment against iCan, iCan admitted to liability for $60,413,112 in damages, settled the suit, and assigned all of its rights against its insurer, Liberty, to the plaintiffs. When the plaintiffs attempted to enforce the judgment against Liberty, the district court determined that the insurance policy did not cover the settled class claims because

_____

[1] *See* Pub. L. No. 102-243, 105 Stat. 2394 (codified as amended at 47 U.S.C. § 227).

2

the TCPA causes of action were "[c]laims . . . arising out of . . . an invasion of privacy." Because we agree with the district court's interpretation of the policy exclusion at issue, we affirm the district court's grant of summary judgment to Liberty.

## I.    Background

### A.    The Class Action Lawsuit

The class action lawsuit at issue in this appeal revolved around iCan sending "unsolicited text messages to cellular telephones without the . . . consent of the recipients." The class complaint, brought by class representative Jacob Horn, specifically alleged two causes of action—both for TCPA violations: one for violations of 47 U.S.C. § 227(b)(1)(A)(iii),[2] and one for violations of 47 U.S.C. § 227(b)(1)(B).[3]

---

[2] In the first cause of action, Horn and the "Autodialed No Consent Class"—a class of plaintiffs that allegedly received text messages from iCan without properly consenting—claimed that iCan violated § 227(b)(1)(A)(iii) of the TCPA. That provision makes it unlawful for any person "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice" to a cellphone.

[3] In the second cause of action, Horn and the "Autodialed Stop Class"—a class of plaintiffs that allegedly received text messages from iCan after informing iCan they no longer wanted to receive messages—claimed that iCan violated § 227(b)(1)(B) of the TCPA. That provision makes it unlawful for any person "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order by the Commission under paragraph (2)(B)."

The complaint alleged that iCan "not only invaded the personal privacy of Plaintiff and members of the putative Classes, but also intentionally and repeatedly violated the TCPA." It also alleged that "iCan has caused consumers actual harm in the form of annoyance, nuisance, and invasion of privacy," and that "the text messages disturbed Horn's use and enjoyment of his phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on Horn's phone." The class action sought actual and statutory damages for the alleged TCPA violations.

## B.    The Insurance Policy

At the time the class action was filed, iCan was insured by Liberty. Under the liability policy provision of their insurance agreement, Liberty was obligated to "pay on behalf of [iCan] Loss which the Company becomes legally obligated to pay by reason of any Claim . . . for any Wrongful Acts by the Company taking place prior to the end of the Policy Period." The insurance policy defined the term "Claim" as, among other things, "a civil proceeding against any Insured commenced by the service of a complaint or similar pleading." The policy also listed several exclusions to the liability provision. Relevant here, the policy provided:

> [Liberty] shall not be liable under [the coverage provision] for Loss on account of any Claim made against [iCan] . . . based upon, arising out of, or attributable to any actual or alleged defamation, *invasion of privacy*, wrongful entry or eviction, false arrest or imprisonment,

4

malicious prosecution, abuse of process, assault, battery or loss of consortium[.][4]

Doc. 56-1 at 19 (emphasis added) (hereinafter "invasion of privacy exclusion").[5]

## C.    Liberty's Refusal to Cover and Defend

After the class action was filed, iCan asked Liberty to defend and indemnify it in the lawsuit, but Liberty declined to do so. Liberty wrote iCan a letter that included several justifications for denying coverage under the policy—one of which was that the invasion of privacy exclusion applied because the complaint was "based upon allegations that [the class members'] privacy rights were violated by [iCan] sending unsolicited text messages."

## D.    The Settlement Agreement

After iCan received the coverage denial letter from Liberty, it entered into a settlement agreement with the class plaintiffs. iCan agreed it was liable to the class for $60,413,112. That aggregate amount was not broken down into "actual" versus "statutory" damages, nor was the amount broken down into loss that arose from privacy harms versus loss that arose from nuisance, annoyance, or property

---

[4] The policy also excluded coverage for "Claims":

based upon, arising out of, or attributable to any actual or alleged price fixing, restraint or trade, monopolization, unfair trade practices or any violation of the Federal Trade Commission Act, Sherman Anti-Trust Act, Clayton Act, or any similar law regulating anti-trust, monopoly, price fixing, price discrimination, predatory pricing or restraint on trade activities[.]

[5] "Doc." numbers refer to the district court's docket entries.

damage.  The agreement provided that "the Judgment may not be satisfied from or executed on any assets or property of iCan," but "shall only be satisfied from Liberty."  The agreement assigned iCan's rights against Liberty under its insurance policy to the class plaintiffs.  After a fairness hearing, the district court approved the class action settlement.

### E.    The Declaratory Judgment Action

To recover under the settlement agreement, the class plaintiffs filed an action against Liberty seeking declaratory relief that it was entitled to recover under the policy.[6]  After Liberty's motion to dismiss the action was denied, both parties moved for summary judgment.  The class plaintiffs argued that iCan's insurance policy covered the class action, which meant that Liberty had a duty to defend and indemnify iCan in the lawsuit, while Liberty argued that the invasion of privacy exclusion applied to the class action and precluded recovery.[7]  Liberty also argued, in its opposition to the class plaintiffs' motion for summary judgment, that

---

[6] Even though iCan agreed that it was liable to the class for $60,413,112, the class sought a declaration that it was entitled to recover only $2,000,000—the policy liability limit for covered claims.

[7] Liberty also argued in its motion for summary judgment that the policy's professional services exclusion precluded recovery.  The district court did not consider that argument because it found that the invasion of privacy exclusion precluded recovery.  Because we agree with the district court that the invasion of privacy exclusion precluded recovery, we do not address Liberty's argument that the professional services exclusion also precludes recovery.

the class could not recover under the policy in any event because iCan failed to allocate between covered and noncovered losses in the settlement agreement.

The district court granted Liberty's motion for summary judgment. It concluded that the insurance policy's invasion of privacy exclusion applied to the class action lawsuit and barred coverage for the entire action. The district court also concluded, in the alternative, that even if only some of the settled losses were precluded by the invasion of privacy exclusion, iCan's failure to allocate the underlying settlement agreement into covered and noncovered loss precluded recovery for any remaining covered loss.[8] The class plaintiffs appealed.

## II. Standard of Review

"We review the district court's determination and application of Florida law in a summary judgment ruling de novo." *Lime Tree Vill. Cmty. Club Ass'n, Inc. v. State Farm Gen. Ins. Co.*, 980 F.2d 1402, 1405 (11th Cir. 1993). Summary judgment is appropriate only where there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

---

[8] The general rule in Florida is that the party seeking recovery has a duty to allocate a settlement amount between covered and noncovered claims. *See Keller Indus., Inc. v. Emps. Mut. Liab. Ins. Co. of Wis.*, 429 So. 2d 779, 780 (Fla. 3d Dist. Ct. App. 1983). The class plaintiffs argue that Florida's general allocation rule did not apply to the iCan class settlement. Because we agree with the district court's determination that the invasion of privacy exclusion barred the class from recovering under the settlement agreement, we do not address the district court's determination that iCan and the class plaintiffs' failure to allocate in the settlement agreement also precluded any recovery.

### III.    Discussion

To resolve this appeal, we must interpret the insurance policy exclusion which provides that Liberty "shall not be liable . . . for Loss on account of any Claim made against [iCan] . . . based upon, arising out of, or attributable to any actual or alleged . . . invasion of privacy." The class plaintiffs argue that the class action is not excluded from coverage by the invasion of privacy exclusion because the class action alleged harms other than invasion of privacy, TCPA claims do not include an element of invasion of privacy, and, at the very least, the exclusion is ambiguous and should be resolved in favor of coverage.

The parties agree that Florida law controls the interpretation of the insurance policy in this case. Under Florida law, we read iCan's insurance policy "as a whole, endeavoring to give every provision its full meaning and operative effect." *Auto–Owners Ins. Co. v. Anderson*, 756 So. 2d 29, 34 (Fla. 2000); *see also* Fla. Stat. § 627.419(1) ("Every insurance contract shall be construed according to the entirety of its terms and conditions as set forth in the policy[.]"). Policy terms are given "their everyday meaning and read in light of the skill and experience of ordinary people." *Lindheimer v. St. Paul Fire & Marine Ins. Co.*, 643 So. 2d 636, 638 (Fla. 3d Dist. Ct. App. 1994). Further, the law in Florida "[is] that insurance coverage must be construed broadly and its exclusions narrowly." *Hudson v. Prudential Prop. & Cas. Ins. Co.*, 450 So. 2d 565, 568 (Fla. 2d Dist. Ct. App.

8

1984).  Given that general rule, ambiguities are construed against the insurer and in favor of coverage, but "to allow for such a construction the provision must actually be ambiguous."  *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005).  "Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule [that ambiguities are resolved in favor of coverage] apposite."  *Excelsior Ins. Co. v. Pomona Park Bar & Package Store*, 369 So. 2d 938, 942 (Fla. 1979); *Swire Pac. Holdings, Inc. v. Zurich Ins. Co.*, 845 So. 2d 161, 165 (Fla. 2003) ("[S]imply because a provision is complex and requires analysis for application, it is not automatically rendered ambiguous.").

To give the invasion of privacy exclusion its "full meaning and operative effect," we focus our analysis on three of the operative terms in the invasion of privacy exclusion: (1) "Claim"; (2) "arising out of"; and (3) "invasion of privacy."

### A.    "Claim"

We turn first to the term "Claim."  In considering this term, we are not "to rewrite [it], add meaning that is not present, or otherwise reach results contrary to the intentions of the parties."  *Excelsior Ins. Co.*, 369 So. 2d at 942; *see also State Farm Fire & Cas. Ins. Co. v. Deni Assocs. of Fla., Inc.*, 678 So. 2d 397, 401 (Fla. 4th Dist. Ct. App. 1996) ("Where the insurer has defined a term used in the policy

in clear, simple, non-technical language . . . judges are [not] empowered to give the defined term a different meaning deemed more . . . desirable to the insured.").

Interpreting the term "Claim" here is simple because the insurance policy itself clearly and thoroughly defines the term as "a civil proceeding against any Insured commenced by the service of a complaint or similar pleading." In this case, therefore, the claim is the civil proceeding against iCan commenced by the service of the class action complaint. Accordingly, if any of the allegations of the complaint are excluded from coverage, the entire lawsuit is excluded, even if the complaint contains allegations that would otherwise be covered.

This interpretation—that the "claim" is the entire "civil proceeding"—is quite broad. But the rule requiring us to construe exclusions narrowly does not mean that expansive definitions in insurance policies are impermissible. And although it may be more "desirable to the insured"—or here the class plaintiffs—to read the term "Claim" narrowly in this case, the clear policy language prevents us from doing so. If we find the civil proceeding "arose out of . . . an invasion of privacy," Liberty is not liable for *any* of the consent judgment.

## B.     "arising out of"

"Arising out of" is a term of art regularly used in insurance policies. The Supreme Court of Florida has interpreted the phrase broadly and held that it is "broader in meaning than the term 'caused by' and means 'originating from,'

'having its origin in,' 'growing out of,' 'flowing from,' 'incident to' or 'having a connection with.'" *Taurus Holdings*, 913 So. 2d at 539 (quoting *Hagen v. Aetna Cas. & Sur. Co.*, 675 So. 2d 963, 965 (Fla. 5th Dist. Ct. App. 1996)). Florida's broad interpretation of the phrase "arising out of" means that if the class action even "ha[s] a connection with" the invasion of privacy, the lawsuit falls under the invasion of privacy exclusion. *See id.*

### C.    "invasion of privacy"

The final step in our analysis is for us to determine whether the class action arose out of an "invasion of privacy." We conclude that it did because the class complaint specifically alleged that iCan intentionally invaded the class members' privacy and sought recovery for those invasions. The class complaint alleged that:

- "Defendant not only invaded the personal privacy of Plaintiffs and members of the putative Classes, but also intentionally and repeatedly violated the TCPA."

- "By sending the text messages at issue in this Complaint . . . , Defendant caused Plaintiffs and the other members of the Classes actual harm and cognizable legal injury. This includes . . . invasions of privacy that result from the sending and receipt of such text messages[.]"

11

- "By sending the unauthorized text messages as alleged herein, iCan caused Plaintiff actual harm in the form of . . . invasion of privacy."

- The TCPA allows certain persons to "bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object."

These allegations show that the class claim clearly "ha[s] a connection with" the invasion of privacy.[9] *Taurus Holdings*, 913 So. 2d at 539. Accordingly, as the "civil proceeding" in this case "arises out of" an "invasion of privacy," the invasion of privacy exclusion in the insurance policy applies.[10] Like the district

---

[9] While we are not, as the dissent suggests, building a trap for the unwary who "colloquially" include allegations of invasions of privacy in their complaint, we also need not save the plaintiffs from themselves. We cannot ignore the fact that the class complaint repeatedly alleges and seeks damages for the invasion of privacy the text messages in the underlying class action caused. We also note that in the typical case, an unwary plaintiff could amend his complaint to remove any "inadvertent" phrases, although the unique procedural posture in this case would not permit it.

[10] The class plaintiffs argue that even if the policy excluded the class action, Liberty still had a duty to defend iCan because an insurer's "duty to defend is . . . broader than [its] duty to indemnify." *Lime Tree Vill.*, 980 F.2d at 1405 (quoting *Baron Oil Co. v. Nationwide Mut. Fire Ins. Co.*, 470 So. 2d 810, 813–14 (Fla. 1st Dist. Ct. App. 1985)).

In Florida, an insurer must defend where the "complaint alleges facts that fairly and potentially bring the suit within policy coverage." *Jones v. Fla. Ins. Guar. Ass'n, Inc.*, 908 So. 2d 435, 442–43 (Fla. 2005) (per curiam). If the complaint's allegations leave any doubt as to the duty to defend, the question must be resolved in favor of the insured. *Trizec Props. v. Biltmore Const. Co.*, 767 F.2d 810, 812 (11th Cir. 1985); *Baron Oil*, 470 So. 2d at 814. Although the class plaintiffs are correct that the duty to defend is broader than the duty to indemnify loss, "[a] duty to defend does not create coverage where coverage does not exist." *Colony Ins. Co. v. G & E Tires & Serv., Inc.*, 777 So. 2d 1034, 1038 (Fla. 1st Dist. Ct. App. 2000).

court, we need not determine whether TCPA violations are *per se* invasions of privacy to reach the conclusion that, in this case, the "civil proceeding" arose out of an "invasion of privacy."[11]

The class plaintiffs and the dissent assert that the invasion of privacy exclusion is ambiguous, and should be construed in the favor of coverage, because one reasonable interpretation is that, by listing multiple common law tort causes of

---

After construing iCan's insurance policy as a whole, we find that the policy does not provide coverage for the class action, so we reject the class plaintiffs' argument that Liberty had a duty to defend the class action lawsuit.

[11] Liberty urges us to adopt the Ninth Circuit's approach to this issue and hold that "a TCPA claim is, by its nature, an invasion of privacy claim." *L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 799 (9th Cir. 2017). Under the *Los Angeles Lakers* approach, "a liability insurance policy that unequivocally and broadly excludes coverage for invasion of privacy claims also excludes coverage for TCPA claims." *Id.*

We acknowledge that in enacting the TCPA, Congress found that banning robocalls was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *See* TCPA § 2; *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020). Further, the TCPA explains that Congress passed the TCPA to protect the "privacy rights" of consumers. *See* 47 U.S.C. § 227(b)(2)(C) (providing that the Commission may promulgate rules "in the interest of the privacy rights this section is intended to protect"). The Supreme Court has likewise recognized this connection. *Barr*, 140 S. Ct. at 2348 (noting that "Congress's continuing broad prohibition of robocalls amply demonstrates Congress's continuing interest in consumer privacy").

Although we acknowledge the TCPA's connection to invasions of privacy that the Ninth Circuit relied on in *Los Angeles Lakers*, we need not address in this case whether every TCPA claim is by its nature an invasion of privacy claim because of the broad qualifying language in iCan's insurance policy.

Because we do not address whether TCPA claims are *per se* claims for invasion of privacy, we need not address the class plaintiffs' argument, adopted by the dissent in *Los Angeles Lakers*, that because the TCPA does not include an element of invasion of privacy, that TCPA claims are not claims for invasion of privacy. *See* 869 F.3d at 807 (Tallman, J., dissenting) ("When Congress defines a cause of action based on specific and unambiguous statutory elements, what matters is what the statute says—not what motivated enactment of the statute.").

13

action but not statutory causes of action like the TCPA, the exclusion does not reach a TCPA claim.[12]  In other words, the class plaintiffs and dissent argue that the exclusion applies only to common law torts, and the complaint does not allege the common law tort of invasion of privacy.[13]  This argument is unavailing.

The insurance policy does not cabin the invasion of privacy exclusion to claims alleging those listed tort causes of action, rather it broadly excludes "civil proceedings" "arising out of" an "invasion of privacy."  As explained above, when we construe the policy "as a whole" and "give meaning to each of its provisions," as we must, the invasion of privacy exclusion unambiguously excludes the class action—which is a civil proceeding arising out of an invasion of privacy—from coverage.  *Auto–Owners Ins. Co.*, 756 So. 2d at 34; *Excelsior Ins. Co.*, 369 So. 2d at 942 ("Only when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction is the rule [that ambiguities are resolved in favor of coverage] apposite.").

---

[12] Plaintiffs also argue that the invasion of privacy exclusion is ambiguous because the insurance policy contains a separate exclusion which lists several federal statutes, not including the TCPA.  *See* note 4, *supra*.  As an initial matter, we note that neither party has argued this other exclusion applies here.  And we are not persuaded by an argument that, because one exclusion does not apply, another applicable exclusion is somehow rendered ambiguous.

[13] The dissent says that we hold that the invasion of privacy exclusion "cannot even reasonably be understood to refer to the century-old common-law tort called 'invasion of privacy.'"  Not so.  We hold, after analyzing the entire provision, that the exclusion cannot be reasonably understood to refer only to a cause of action for the tort of invasion of privacy.  While the language would certainly cover—and thus exclude—an action for the tort of invasion of privacy, it is broader than just that when the exclusion is read as a whole.

It is true, as the dissent explains, that "[i]f the relevant policy language is susceptible to more than one reasonable interpretation, one providing coverage and another limiting coverage, the insurance policy is considered ambiguous." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007) (quoting *Auto-Owners Ins. Co.*, 756 So. 2d at 34). But the dissent's proposed "alternative interpretation" is not reasonable because it ignores the surrounding language in the policy—specifically the phrase "arising out of," which is crucial to our analysis.[14] Notably, the dissent omits that phrase from its analysis and suggests that a plaintiff must state a common law tort claim to trigger the coverage exclusion provision. That position contravenes the Florida Supreme Court's broad interpretation of the phrase because it would transform the phrase "arising out of" or "having a connection with" into "for" any "invasion of privacy" in the tort sense. But the policy as written cannot bear that interpretation, and it is not our role to modify the terms of a contract.

Accordingly, although we acknowledge that "invasion of privacy" is the name of a common law tort, we cannot simply analyze the phrase, as the dissent proposes, without heeding the interpretive constraints imposed by the other terms in the policy.

---

[14] We note that the dissent does not dispute that the policy definition of "Claim" and the interpretation by Florida courts of the phrase "arising out of" are quite broad and control the interpretation of the invasion of privacy exclusion.

## IV.    Conclusion

Because the invasion of privacy exclusion barred coverage for the class

action, we affirm the district court's grant of summary judgment to Liberty.

**AFFIRMED.**

NEWSOM, Circuit Judge, dissenting:

The Court holds that a term in an insurance policy that excludes coverage for claims arising out of an "invasion of privacy" cannot even *reasonably* be understood to refer to the century-old common-law tort called "invasion of privacy." I disagree—not only is the exclusion provision at least susceptible of that interpretation, it is, to my mind, best read that way. Accordingly, I respectfully dissent.

## I

I agree with the Court's account of the factual and procedural history underlying this appeal. Liberty Insurance issued a policy to iCan Holdings that generally committed Liberty to covering damages that iCan incurred in lawsuits. But the policy contained a provision—the meaning of which is determinative of this case—that excluded certain kinds of claims from the coverage that Liberty would provide:

> [Liberty] shall not be liable under [the policy] for Loss on account of any Claim made against [iCan] . . . based upon, arising out of, or attributable to any actual or alleged defamation, invasion of privacy, wrongful entry or eviction, false arrest or imprisonment, malicious prosecution, abuse of process, assault, battery or loss of consortium.

While the policy was in effect, a class of plaintiffs sued iCan. They brought four counts, all under the Telephone Consumer Protection Act, 47 U.S.C. § 227, alleging that iCan had sent them unwelcome robotexts.

The TCPA provides a private cause of action to recipients of robocalls and robotexts. To prove a TCPA violation, a plaintiff generally must prove that the defendant made a robocall or sent a robotext without the plaintiff's consent. *See* 47 U.S.C. § 227(b)(1); 47 C.F.R. § 64.12000. Although the class plaintiffs' complaint in this case at times colloquially characterized iCan's robotexts as involving "invasions of privacy," it didn't contain any counts alleging the common-law tort of invasion of privacy.

The district court nonetheless concluded that the policy provision quoted above—which refers to claims arising out of an "invasion of privacy"— unambiguously excluded the class plaintiffs' TCPA claims from coverage. It also held that even if the claims weren't excluded, iCan's failure to allocate losses precluded it from recovering here.

## II

## A

The following propositions are, I think, incontestable. First, Florida law requires us to interpret "any ambiguities" in an insurance contract "against the insurer and in favor of coverage." *U.S. Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 877 (Fla. 2007). Second, a contract provision is ambiguous if it is susceptible of "more than one reasonable interpretation." *Garcia v. Fed. Ins. Co.*, 969 So. 2d 288, 291 (Fla. 2007). And third, the class plaintiffs in the underlying lawsuit here

18

neither (1) brought a count for the tort of "invasion of privacy" nor (2) alleged facts that would state a claim for that tort.[1]

Therefore, if the policy exclusion is ambiguous as to whether it refers to the common-law tort called "invasion of privacy"—in other words, if it could reasonably be so interpreted—then we must interpret it to refer only to that tort. And if that's how we have to interpret the exclusion, then it can't exclude the class plaintiffs' lawsuit from coverage because the suit doesn't arise out of an invasion of privacy in the tort sense.

---

[1] Here's why the plaintiffs didn't allege facts that would state a tort claim for invasion of privacy:  Only one type of invasion-of-privacy claim, the "invasion of privacy by intrusion," is even roughly analogous to the facts alleged in the plaintiffs' complaint.  To establish an invasion of privacy by intrusion, a plaintiff typically must prove (1) an intentional intrusion (2) into a matter that he has a right to keep private (3) by a method highly offensive to the reasonable person or in such a manner as to cause outrage or mental suffering.  *See* 62A Am. Jur. 2d Privacy § 34; 77 C.J.R. Right of Privacy and Publicity § 24.  As to element (3), Florida courts adjudicating invasion-of-privacy-by-intrusion claims require evidence of an invasion that is "indecent and outrageous and calculated to cause . . . excruciating mental pain." *Stoddard v. Wohlfahrt*, 573 So. 2d 1060, 1063 (Fla. Dist. Ct. App. 1991).

In this case, the class plaintiffs' complaint alleged that iCan sent unwelcome robotexts offering help getting insurance.  It didn't allege that the texts were calculated to cause excruciating mental pain.  Florida courts have specifically held that unsolicited contact by phone, including in ways far more offensive and personal than what the plaintiffs alleged here, doesn't satisfy element (3) of the invasion-of-privacy-by-intrusion tort. *See Stoddard*, 573 So. 2d at 1061 (holding that two unsolicited phone calls with threatening and vulgar words didn't constitute invasion of privacy).  Tort treatises confirm that conclusion.  For unsolicited phone messages to "render the caller or seller liable in tort for an invasion of privacy," they say, the "intrusion supporting liability must be repeated [and] persistent."  R. Keith Perkins, *Unsolicited telephone calls and other forms of communication*, Domestic Torts § 6:7 (2020).  The contact must also be "offensive to a person of ordinary sensibilities," which depends on "whether the language used was vile, vicious, abusive, or profane; the late hour of the intrusion; the number of intrusions; the presence of publicity surrounding the intrusion; and the malicious falsity of the defendant's intrusive messages." *Id.*  By any reading, the facts alleged here fall short of that standard.

**B**

The Court holds that it is unreasonable to interpret the policy exclusion's term "invasion of privacy" to refer to the tort bearing that name. *See* Maj. Op. at 13–15. The Court reasons that the term instead unambiguously refers to any lawsuit in which a plaintiff includes the words "invasion of privacy" in her complaint. *Id.* at 11–13. The plaintiffs here alleged, for instance, that in violating the TCPA, iCan "invaded the[ir] personal privacy" and subjected them to "aggravation and nuisance and invasions of privacy." Compl. at 4–5. According to the Court, the policy exclusion absolves Liberty of responsibility for insuring iCan against—so far as I can tell—*any* complaint that, like the one here, colloquially (and conclusorily) uses the term "invasion of privacy," no matter what the complaint was really about or what concrete facts it alleged. *See* Maj. Op. at 11–13. Although the complaint here didn't allege facts amounting to an invasion of privacy or bring a claim for invasion of privacy in the tort-law sense, the complaint's occasional colloquial references were enough.

That seems wrong to me for two independent reasons, which I'll explain in turn.

**1**

As an initial matter, the Court hasn't shown, as it must, why iCan's reading of the policy—such that the term "invasion of privacy" refers to the common-law

tort, and thus that the provision excludes only suits about that tort—is unreasonable. And with good reason. Having been around for more than a century now, the tort called "invasion of privacy" is a familiar thing. *See Hunstein v. Preferred Collection & Mgmt. Servs.*, 994 F.3d 1341, 1347 (11th Cir. 2021) (citing, *e.g.*, *Pavesich v. New England Life Ins. Co.*, 122 Ga. 190, 50 S.E. 68 (1905), *Munden v. Harris*, 153 Mo. App. 652, 134 S.W. 1076 (1911), and *Kunz v. Allen*, 102 Kan. 883, 172 P. 532 (1918)). It comprises four closely related types of claims, each with its own formal elements. It is most assuredly well known to lawyers drafting contracts about the types of lawsuits that their insurance will cover.

Indeed, the primary definition that legal authorities assign to the term "invasion of privacy" is just that: a specific common-law tort that comprises four familiar legal claims. They explain, for instance, that "[t]here are four disparate torts under the common name of invasion of privacy; these may be described briefly as: (1) intrusion upon the plaintiff's seclusion or solitude, or into his private affairs; (2) public disclosure of embarrassing private facts about the plaintiff; (3) publicity which places the plaintiff in a false light in the public eye; and (4) appropriation, for the defendant's advantage, of the plaintiff's name or likeness." *Invasion of Privacy*, Plaintiff's Proof Prima Facie Case § 14:18 (2020); *see also Invasion of Privacy*, Black's Law Dictionary (10th ed. 2014) ("An

21

unjustified exploitation of one's personality or intrusion into one's personal activities, actionable under tort law and sometimes constitutional law," which comprises the same four claims: (1) "invasion of privacy by appropriation," (2) "invasion of privacy by intrusion," (3) "invasion of privacy by public disclosure of private facts," and (4) "invasion of privacy by false light."); *cf.* 77 C.J.S. Right of Privacy and Publicity § 8 ("The elements of liability for invasion of privacy are a public disclosure of facts which are private, secluded, or secret, and facts which are offensive and objectionable to a reasonable person of ordinary sensibilities.").

Not surprisingly, Florida courts have likewise recognized that the term "invasion of privacy" means "the common law tort of invasion of privacy." *Allstate Ins. Co. v. Ginsberg*, 863 So. 2d 156, 162 (Fla. 2003). Echoing the treatises, encyclopedias, and dictionaries, they have explained that the invasion-of-privacy tort includes "four categories" of claims: "(1) appropriation … (2) intrusion … (3) public disclosure of private facts … and (4) false light in the public eye." *Id*. When a contract uses the name of such a familiar and well-established common-law tort, it seems to me at the very least reasonable to interpret it as referring to that tort.

Lest there be any serious doubt about the reasonableness of that reading, the neighboring terms in the policy exclusion here remove it. That provision, recall, provides (with my emphasis added) that:

22

[Liberty] shall not be liable under [the policy] for Loss on account of any Claim made against [iCan] . . . based upon, arising out of, or attributable to any actual or alleged *defamation, invasion of privacy, wrongful entry or eviction, false arrest or imprisonment, malicious prosecution, abuse of process, assault, battery or loss of consortium*.

Tellingly, every term listed in the exclusion provision refers to a common-law tort. *Cf.* Restatement (Second) of Torts §§ 13, 21, 35, 88–95, 558–623, 653–73, 682, 693 (1965). Where, as here, eight of the nine items listed in a series are indisputably identifiable common-law torts, and the ninth term also names a specific tort, then surely it is at least reasonable—if not well nigh compulsory—to interpret the ninth term likewise to refer to that ninth specific tort. *See id.* at §§ 652A–652I ("Invasion of Privacy"). *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 195 (2012) ("When several nouns or verbs or adjectives or adverbs—any words—are associated in a context suggesting that the words have something in common, they should be assigned a permissible meaning that makes them similar."); *see also United States v. Williams*, 553 U.S. 285, 294 (2008) ("[A] word is given more precise content by the neighboring words with which it is associated.").

If I were an insured party wanting to ensure that an exclusion provision would exempt from coverage only claims based on these nine specific torts—and not other claims, like ones under the TCPA—I would probably insist that the insurer include the exact language that the provision here used. So I find it

23

surprising that interpreting the language to cover only those nine specific torts is, according to the Court, positively unreasonable. *See* Maj. Op. at 13–15.

**2**

Even setting aside its inability to refute the reasonableness of iCan's interpretation, the Court's own reading may itself be unreasonable. The Court reasons that the policy exclusion means that whenever a plaintiff includes the term "invasion of privacy" in her complaint, Liberty is absolved from covering losses incurred in that lawsuit. *See* Maj. Op. at 11–13. It's unclear to me why any party to an insurance policy would ever allow coverage to be dictated by the conclusory terms and labels that a plaintiff might later choose to include in her complaint. After all, conclusory descriptions in complaints don't have any legal relevance for any purposes. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Both practically and legally, then, it would be surprising—again—for millions (billions?) of dollars in insurance coverage to depend on a plaintiff's colloquial and conclusory use of the term "invasion of privacy." The Court's reasoning suggests that if the class plaintiffs had amended their complaint to do nothing more than strike the term "invasion of privacy," then—although it wouldn't have had any other legal consequence—Liberty would lose this case. *See* Maj. Op. at 12 n.9. Weird.

24

I suppose it's theoretically possible that two parties could contract to make insurance coverage turn on whether a complaint included magic (if conclusory) words. But such hypothetical parties would surely use more explicit language to accomplish that goal. If Liberty and iCan had wanted their contract to have the effect that the Court gives it, they presumably would have said something like the following: "Liberty shall not be liable for Loss on account of any Claim made against iCan *that uses the words 'invasion of privacy' in the complaint.*" Because they didn't say that, I don't think it's reasonable to interpret the exclusion provision to accomplish such an unnatural end. And it most certainly isn't *unreasonable* to embrace the (more natural) tort-law interpretation.

## C

Liberty argues in the alternative that, regardless of what magic words the class plaintiffs included in their complaint, we should interpret the term "invasion of privacy" more broadly. Instead of referring to the common-law tort, Liberty says, the term unambiguously refers to all causes of action that involve privacy interests. The Ninth Circuit adopted that view in a materially identical case. *See L.A. Lakers, Inc. v. Fed. Ins. Co.*, 869 F.3d 795, 799 (9th Cir. 2017). The Court rightly declines Liberty's invitation to endorse the Ninth Circuit's approach. *See* Maj. Op. at 13 n.11.

25

I agree with Liberty that legal actors can and sometimes do use the term "invasion of privacy" in this broad, colloquial sense to refer to other causes of action that implicate privacy. *See, e.g.*, *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 140 S. Ct. 2335, 2344 (2020). And I agree that, used in that sense, the term "invasion of privacy" would encompass suits that arise under the TCPA because that statute protects a person's privacy-based interest in being free from unwanted robocalls and robotexts. *See id.*

But that argument doesn't win the day for Liberty, either. Because (as already explained) we are required by law to interpret ambiguities in policy exclusions narrowly, Liberty has to establish not only that its interpretation is reasonable, but also that alternative interpretations that preserve coverage are unreasonable. *See Garcia*, 969 So. 2d at 291. But Liberty—like the Court—forgoes this step. It hasn't explained why it is unreasonable to interpret the term "invasion of privacy" to refer to the traditional common-law tort called "invasion of privacy."

Liberty suggests that, even if it can't explain why the term "invasion of privacy" can't reasonably be interpreted to refer to the common-law tort, a Florida Supreme Court decision requires us to accept that it can't. In *Penzer v. Transportation Insurance Co.*, the court interpreted an insurance provision that covered any "injury . . . arising out of . . . oral or written publication of material

26

that violates a person's *right of privacy*." 29 So. 3d 1000, 1003 (Fla. 2010) (emphasis added). The court held that the provision covered suits arising under the TCPA for unwelcome faxes because "the plain meaning of 'right of privacy' is the legal claim one may make for privacy, which is to be gleaned from federal or Florida law." *Id.* at 1006. On this definition, the "right of privacy" covered TCPA claims because those claims implicated legally protected privacy interests. *Id.*

But unlike the term "invasion of privacy"—which is at issue here—the term "right of privacy"—which was at issue in *Penzer*—doesn't refer to a common-law tort. Rather, it refers to a broad constellation of constitutional and private-law rights. *See Right of Privacy*, Black's Law Dictionary (10th ed. 2014) ("The right to personal autonomy."); *Griswold v. Connecticut*, 381 U.S. 479, 486 (1965) (recognizing a "right of privacy" against a contraception prohibition); *Mincey v. Arizona*, 437 U.S. 385, 391 (1978) (recognizing a "right of privacy" against the search of house). At the risk of stating the obvious, it's a lot less reasonable to conclude that a contract refers to the tort of "invasion of privacy" when it says "right of privacy," which describes a separate legal concept, than when it says "invasion of privacy," which literally names the tort itself.

\* \* \*

Because I remain unconvinced that the term "invasion of privacy" unambiguously refers to a robotext-based claim under the TCPA, I (under binding

27

Florida law) have to give it the narrower meaning—as referring to the common-law tort of "invasion of privacy." And because the plaintiffs here didn't bring a count for the invasion-of-privacy tort or allege facts that would state a claim for that tort, I would conclude that the exclusion provision didn't cover this suit, and that Liberty was therefore obligated to provide coverage.[2]

## III

Because I would interpret the policy to provide (rather than exclude) coverage, I would reach the district court's alternative holding that iCan's failure to allocate the settlement agreement between covered and uncovered losses precluded recovery. The district court's conclusion depends on Florida law that provides that if—and only if—a lawsuit's claims or damages are partially but not fully covered by an insurance policy, the insured party must allocate any settlement amount between covered and uncovered losses. *Keller Indus. v. Empl. Mut. Liab. Ins. Co. of Wis.*, 429 So. 2d 779, 780 (Fla. Dist. Ct. App. 1983). If the insured fails to allocate its losses, it is precluded from recovering against the insurer. *Id.*

Florida's allocation requirement doesn't matter in this case because the requirement's precondition—that the lawsuit's claims or damages are partially but

---

[2] The Court responds by emphasizing the phrase "arising out of," which it says should be construed broadly. *See* Maj. Op. at 10–11, 15. With respect, I think that the Court misses the point. If we're bound to interpret the exclusion provision to refer to an "invasion of privacy" in the tort sense, then it is incontrovertible that there was no invasion of privacy here. And of course, a lawsuit can't "aris[e] out of"—or originate from, grow out of, flow from, be incident to, or have a connection with—an "invasion of privacy" that didn't occur.

28

not fully covered—isn't met.  If the term "invasion of privacy" must be interpreted to refer only to the common-law tort, and none of the claims here concerned that tort, then the whole lawsuit fell outside of the exclusion provision.  It was fully covered.  Therefore, iCan had no duty to allocate the settlement, so it isn't precluded from recovering.

## IV

In sum, the Court reasons that the policy exclusion's reference to the term "invasion of privacy" unambiguously covers any complaint that includes the term "invasion of privacy."  Liberty alternatively argues that the term "invasion of privacy" unambiguously refers to all causes of action that involve privacy interests. Because neither addresses the robust evidence that supports interpreting the term "invasion of privacy" to refer to the tort by the same name, I don't think that either is correct.  Accordingly, I would reverse and remand to the district court to decide the remaining issues at summary judgment.  For these reasons, I respectfully dissent.